## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALBERT HINDS, ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **No. 05-2362-KHV** |
| ) | |
| **SPRINT/UNITED MANAGEMENT** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Albert Hinds brings suit against Sprint/United Management Company and Sprint Nextel Corporation (collectively "defendant" or "Sprint"), alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #38) filed August 11, 2006, Plaintiff's Motion To Strike The Affidavits Of David Wamsher And Kevin Quirk Or, In The Alternative, To Reopen Discovery (Doc. #52) filed December 22, 2006 and Plaintiff's Motion To Alter Or Amend Judgment And Memorandum In Support (Doc. #57) filed December 27, 2006.

In a previous order, the Court sustained defendant's motion for summary judgment on plaintiff's retaliation claim. See Memorandum And Order (Doc. #50) filed December 12, 2006. As to plaintiff's age discrimination claim, the Court ordered defendant to file a supplemental brief which articulates a facially nondiscriminatory reason why it retained younger employees at plaintiff's job position and grade level, and why it contends that plaintiff cannot establish pretext with respect to such explanation. See Order (Doc. #49) filed December 11, 2006. Defendant has now filed a supplemental brief, to which plaintiff has responded. See Defendants' Supplemental Suggestions In

Support Of Summary Judgment ("Defendant's Supplemental Brief") (Doc. #51) filed December 15, 2006 and Plaintiff's Response To Defendants' Supplemental Memorandum In Support Of Motion For Summary Judgment ("Plaintiff's Response") (Doc. #54) filed December 22, 2006.  For reasons stated below, the Court overrules plaintiff's motion to strike affidavits, sustains defendant's motion for summary judgment as to plaintiff's age discrimination claim and overrules plaintiff's  motion to alter or amend.

**I.      Plaintiff's Motion To Strike Affidavits**

Defendant's supplemental brief includes additional facts supported by affidavits by David Wamsher, human resources manager, and Kevin Quirk, manager of business development.  Plaintiff asks the Court to strike the affidavits on the ground that they relate to facts, contentions and legal arguments which defendant did not preserve in the pretrial order.  Specifically, plaintiff asserts that in the pretrial order, defendant states that it discharged plaintiff because it eliminated the entire CCTTE group, and that the Court should not allow defendant to now provide a different explanation. Plaintiff contends that by allowing defendant to supplement the record with information and reasons which go beyond the contentions in the pretrial order, the Court has granted defendant a "mulligan."[1] Plaintiff's Response To Defendants' Supplemental Memorandum In Support Of Motion For Summary Judgment (Doc. #54) filed December 22, 2006 at 2, 10.

Plaintiff's argument overlooks the glaring fact that in the pretrial order, plaintiff's claim is that defendant treated younger employees in his department more favorably by allowing them to

---

[1]      The Court had to look up this word, but it learned that a mulligan is "a free shot sometimes given a golfer in informal play when the previous shot was poorly played."  Merriam-Webster's Online Dictionary, www.m-w.com/dictionary/mulligan.  Plaintiff's analogy is inept, however, because – as explained below – if anybody in this case received a mulligan, it was plaintiff.

2

retain their positions and assume some job duties which plaintiff had been performing.  See Pretrial Order (Doc. #37) filed August 9, 2006 at 5.  In other words, plaintiff's pretrial allegations focused solely on how defendant treated plaintiff and younger employees in his department.  Defendant's legitimate nondiscriminatory reason – that it eliminated the entire department – understandably and fully responded to that allegation.  In response to defendant's summary judgment motion, perhaps because the record so quickly disposed of plaintiff's original theory that defendant retained younger employees from his department,[2] plaintiff introduced evidence regarding defendant's treatment of employees outside his department who are listed on a so-called Candidate Selection Worksheet.  Plaintiff's new theory went outside the scope of his allegations in the pretrial order, but defendant did not object.  In an attempt to give plaintiff every benefit of the doubt, the Court therefore considered plaintiff's new theory, i.e. that defendant treated similarly situated employees outside his department more favorably.  Because plaintiff changed his theory in the middle of the summary judgment briefing, defendant could not use the pretrial order to advance a legitimate nondiscriminatory reason for treating employees outside plaintiff's CCTTE group more favorably than it treated plaintiff.  Plaintiff's argument with regard to the pretrial order is therefore overruled.[3]

---

[2]    As noted below, of five similarly situated employees in the CCTTE group, defendant retained the three oldest and discharged the two youngest.

[3]    Plaintiff objects that the Wamsher and Quirk affidavits relate to issues which defendant did not raise in its original memorandum and reply brief in support of summary judgment. As discussed above, the Court has asked defendant to respond to plaintiff's new theory that it treated similarly situated employees outside plaintiff's department more favorably.  In light of the fact that plaintiff did not assert this theory in the pretrial order, the Court will not penalize defendant for not addressing it in the pretrial order and summary judgment motion.  The Court's obligation is to secure the just, speedy and inexpensive determination of this action.  See Rule 1, Fed. R. Civ. P.  If defendant is entitled to judgment as a matter of law, it would be absurd to call a jury and require plaintiff to present days of evidence before directing a verdict in favor of defendant.  Although the summary judgment procedure in this case has been unusual, the atypicality results from plaintiff's
(continued...)

Plaintiff argues that the Wamsher and Quirk affidavits contradict their prior sworn testimony in the case. The Court will disregard affidavits which are inconsistent with prior sworn testimony if the changes attempt to create a sham fact issue. See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986). The utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony. Id. To determine if an affidavit is an attempt to create a sham issue of fact, the Court considers whether the witness was cross-examined during his earlier testimony, whether he had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit is based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. Id.

As an initial matter, the only issue upon which the affidavits potentially contradict prior testimony relates to the skills of the employees who are listed on the Candidate Selection Worksheet. In their depositions, Wamsher testified that Sprint created the spreadsheet according to employee skill set function, see Wamsher Depo. at 11:10-18, and Quirk testified that the spreadsheet included experts in the area of infrastructure support, see Quirk Depo. at 7:10-24. Wamsher's affidavit, however, states as follows:

> On the Spreadsheet, Al Hinds has the generic job title of "Grade 77, Program Manager IV." Let me first point out that just because employees across the Sprint organization were grouped into a strata of employment (for example, Grade 77 Program Manager IV) does not mean they did the same or even remotely similar jobs. That definitely is not the case. The generic job grades and titles placed broad categories of employees into pay ranges. Employees on the same grade level, such as Grade 77 Program Manager IVs, who were in different groups that performed

---

[3](...continued)
ever-evolving theories of liability. Because the Court has reopened the summary judgment briefing and allowed both sides to be fully heard, plaintiff rightly cannot complain.

different functions were not in the same or similar positions doing the same or even remotely similar tasks/skills.  They were just in the same employment level.

<u>Affidavit Of David Wamsher</u> ¶ 4,  Exhibit A to <u>Defendants' Supplemental Brief</u> (Doc. #51).

Likewise, Quirk's affidavit states as follows:

> Just because employees across the Sprint organization were grouped into a strata of employment (for example, Grade 77 Program Manager IV) does not mean they did the same or even remotely similar jobs.  That definitely is not the case.  The generic job grades and titles placed broad categories of employees into pay ranges. Employees on the same grade level, such as Grade 77 Program Manager IVs, who were in different groups that performed different functions were not in the same or similar positions doing the same or even remotely similar tasks.  They were just in the same employment level.

<u>Affidavit of Kevin Quirk</u> ¶ 5, Exhibit B to <u>Defendants' Supplemental Brief</u> (Doc. #51).  To the extent the affidavits conflict with prior testimony, the Court will accept the deposition testimony for purposes of ruling on defendant's motion for summary judgment.  Construed in a light most favorable to plaintiff, the deposition testimony supports an inference that as to job skills, plaintiff was similarly situated to the employees listed on the spreadsheet.

Plaintiff's remaining complaints are unclear.  Plaintiff points to specific deposition testimony,[4] but he does not explain how the affidavits supposedly contradict such testimony.  <u>See</u> <u>Plaintiff's Memorandum In Support Of Motion To Strike The Affidavits Of David Wamsher And Kevin Quirk Or, In The Alternative, To Reopen Discovery</u> ("<u>Plaintiff's Memorandum</u>") (Doc. #53) filed

---

[4]      Specifically, plaintiff asserts that Wamsher testified in his deposition that (1) he did not know how the determination was made regarding who to include on the spreadsheet; (2) he could not identify which employees on the spreadsheet were terminated or retained; (3) such testimony would require "guessing" on his part; and (4) he would have to ask the people who made the selection decisions.  Plaintiff also points to Quirk's deposition testimony that (1) the spreadsheet did not include all of Fields' direct reports; (2) he did not know the source of the job requirements listed on the spreadsheet; and (3) he did not know what use was made of the spreadsheet.  <u>See</u> <u>Plaintiff's Memorandum In Support Of Motion To Strike The Affidavits Of David Wamsher And Kevin Quirk Or, In The Alternative, To Reopen Discovery</u> ("<u>Plaintiff's Memorandum</u>") (Doc. #53) filed December 22, 2006 at 6-8.

December 22, 2006 at 6-8.  Wamsher and Quirk testified pursuant to plaintiff's notice under Rule 30(b)(6), Fed. R. Civ. P., which asked defendant to produce a witness to testify as to the following matters:

1.      The purpose . . . of the . . . Candidate Selection Worksheet . . . .

2.      The use made . . . of the . . . Candidate Selection Worksheet . . . .

3.      The reason . . . for the omission of information concerning several co-workers . . . from the . . . Candidate Selection Worksheet . . . .

4.      Any written guidelines that Defendant used, followed, relied upon or consulted in connection with the preparation of the electronic (i.e. Excel) Candidate Selection Worksheet . . . .

Plaintiff's Amended Rule 30(b)(b) Notice To Take Deposition (Doc. #34) filed July 27, 2006. Plaintiff does not complain that the witnesses did not answer his questions regarding these topics. Rather, it appears that plaintiff's complaints go to their inability to answer his rhetorical questions about issues outside the scope of the Rule 30(b)(6) notice.  The fact that Wamsher and Quirk were not prepared to testify as to other matters does not show that their affidavits are a sham.

Plaintiff asserts that to the extent the affidavits are based upon refreshed recollections or research conducted after the close of discovery, plaintiff should be permitted to reopen discovery to probe the basis for the affidavits.  Plaintiff's Memorandum (Doc. #53) at 8.  Despite ample opportunity, however, plaintiff chose not to conduct discovery on these issues in the first instance. His failure to do so does not entitled him to reopen discovery.  Plaintiff's motion to strike the affidavits and/or reopen discovery is overruled.

6

**II.     Defendant's Motion For Summary Judgment As To Age Discrimination Claim[5]**

In its previous order, the Court noted that construed in a light most favorable to plaintiff, the summary judgment record might support an inference that defendant retained younger employees who worked in positions similar to plaintiff – specifically, that defendant retained John Hornbuckle (age 46), Gia Jackson (age 42), Jerri Stotts (age 37), Laura Umphenor (age 44) and Edmond Vezquez (age 33), all of whom had the same job title and grade level as plaintiff (grade 77 program manager IV).  See Order (Doc. #49) at 1-2.  The Court further noted that defendant's facially nondiscriminatory reason for its action – that it discharged plaintiff because it eliminated the CCTTE group as part of a RIF – did not explain why it found other positions for some members of the CCTTE group, as well as other employees who worked as program managers IV at grade 77.  The Court ordered defendant to file a supplemental brief which articulated a facially nondiscriminatory reason why it retained younger employees at plaintiff's job position and grade level and stated why plaintiff could not establish pretext with respect to such explanation.

**A.     Additional Facts**

In response to the Court's order, defendant filed a supplemental brief which contains additional factual assertions regarding the fate of CCTTE group members and other employees at plaintiff's job and grade level after the RIF.  See Defendant's Supplemental Brief at 2-8.  Plaintiff claims that employees listed on the Candidate Selection Worksheet, with plaintiff's job title and grade level, had work skills similar to plaintiff's.  Plaintiff does not otherwise dispute defendant's new allegations, see Plaintiff's Response (Doc. #54) at 3-7, and the Court therefore adopts them.

Briefly summarized, the additional facts are as follows: If an employee's job remained after

---

[5]     The Court incorporates by reference the legal standards and facts set forth in its Memorandum And Order (Doc. #50) filed December 12, 2006 at 1-15.

the reorganization and RIF, Sprint tried to keep that employee in that position as an incumbent. Of the employees whose positions were eliminated, Sprint selected a few to fill "open box" positions, i.e. positions which existed in the new organization and were not carried over and filled by incumbents. Sprint selected employees for open box positions based on discussions at the so-called hotel meeting regarding the skill sets of available candidates. Five employees in plaintiff's CCTTE group (plaintiff, Rigdon, Smith, Yeager and Jacobson) worked at the same employment level (grade 77 program manager IV), and all of them were available to fill open box positions. Of the five CCTTE employees, Sprint selected the three oldest (Rigdon, Smith and Yeager) to fill open box positions and terminated the employment of the two youngest (plaintiff and Jacobson).[6]   See Defendant's Supplemental Brief (Doc. #51) at 2-8.

After defendant decided which employees to retain or terminate, it created a so-called Candidate Selection Worksheet. Among other employees, the Candidate Selection Worksheet lists eight employees outside the CCTTE group who were younger than plaintiff and worked at his same job level (grade 77 program manager IV).[7]  After the reorganization and RIF, Sprint retained seven of these eight younger employees in the same positions they had held prior to the reorganization and RIF. In other words, the RIF did not eliminate the positions of these employees. Sprint eliminated the position of the eighth younger employee, 28-year-old Paul Payne, and discharged him as part of the RIF.

---

[6]      The record does not disclose any explanation why defendant chose to retain Rigdon, Smith and Yeager over plaintiff and Jacobson.

[7]      The eight employees include the five which the Court previously identified, i.e. John Hornbuckle (age 46), Gia Jackson (age 42), Jerri Stotts (age 37), Laura Umphenor (age 44) and Edmond Vezquez (age 33). The Candidate Selection Worksheet also lists Cynthia Shope (age 46), Valerie Sims-Harrison (age 39) and Paul Payne (age 28).

### B.      Analysis

#### 1.      Prima Facie Case

To establish a prima facie case of age discrimination in a RIF context, plaintiff must show that (1) he was within a protected age group; (2) he was doing satisfactory work; (3) defendant discharged him despite the adequacy of his work; and (4) some evidence suggests that defendant intended to discriminate against him in reaching its RIF decision.  See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192-93 (10th Cir. 2006).  Such a prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors."  Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978).  In most cases, establishing a prima facie case is perfunctory, and liability turns on whether defendant's stated explanation for the adverse employment action is pretextual.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1201 (10th Cir. 2006).

Defendant contends that plaintiff cannot establish the fourth element of a prima facie case, i.e. that it intended to discriminate in reaching its RIF decision.  Plaintiff may satisfy this element through circumstantial evidence that defendant fired him but retained younger employees in similar positions.  See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1167 (10th Cir. 1998).  As to plaintiff's original theory, i.e. that defendant treated younger employees in his department more favorably, plaintiff has not produced evidence sufficient to make a prima facie showing.  The undisputed evidence establishes that of the five similarly situated employees in plaintiff's CCTTE group, defendant retained the three oldest (Rigdon, Smith and Yeager) and discharged the two youngest (plaintiff and Jacobson).  Plaintiff has not shown that defendant treated younger employees in his department more favorably.  Defendant is therefore entitled to summary judgment on plaintiff's

9

original claim.

As to plaintiff's new theory, i.e. that defendant treated younger employees outside his department more favorably, the record supports a finding that defendant retained seven younger employees who worked in positions similar to plaintiff. This showing is sufficient to demonstrate a genuine issue of material fact on plaintiff's prima facie case of age discrimination. See id. at 1167-68 (evidence that defendant retained at least one younger employee in same job code sufficient to meet prima facie case).[8]   The burden therefore shifts to defendant to articulate a facially nondiscriminatory reason for its action. See Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995).

### 2.    Defendant's Stated Reason For Its Actions

Defendant states that it discharged plaintiff because it eliminated his entire CCTTE group as part of the RIF. Defendant states that it did not discharge seven younger employees on the Candidate Selection Worksheet because it did not eliminate their jobs as part of the reorganization and RIF. Because defendant has articulated a facially nondiscriminatory reason for its actions, the burden shifts back to plaintiff to show that defendant's proffered reason is pretextual.

### 3.    Pretext

Evidence of pretext may take a variety of forms. See Aramburu v. Boeing Co., 112 F.3d 1398, 1411 n.10 (10th Cir. 1997). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

---

[8]     Plaintiff need not show that he was equally or more qualified than the employees which defendant retained. Id. at 1168 n.5.

Typically, in a RIF case, a plaintiff can demonstrate pretext with evidence that (1) his own termination does not accord with the RIF criteria; (2) defendant deliberately falsified or manipulated the RIF criteria in order to terminate him; or (3) the RIF was generally pretextual.  See Pippin, 440 F.3d at 1193.  Plaintiff can show pretext under the third category by showing that defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF general time frame.  Id.  In a typical non-RIF context, plaintiff can also show pretext based on "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."  Id. (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

Plaintiff does not deny that Sprint eliminated his position as part of a RIF, or that the RIF did not eliminate the positions of the seven younger employees listed on the Candidate Selection Worksheet.  Plaintiff does not dispute that Sprint's policy was to keep an employee in his or her position if the job remained after the RIF.  Plaintiff does not claim that the RIF itself was a pretext for age discrimination, that his termination did not accord with RIF procedure or that defendant falsified or manipulated RIF criteria in order to terminate him.  Plaintiff has not shown that Sprint treated him differently than younger employees outside the CCTTE group whose positions were eliminated in the RIF.[9]  Plaintiff's evidence of pretext boils down to questions about why Sprint created the Candidate Selection Worksheet after it decided which employees to retain or terminate.  Specifically, plaintiff contends that the Candidate Selection Worksheet demonstrates that defendant's legitimate nondiscriminatory reason for his termination is false or unworthy of belief because it

---

[9]        Plaintiff does not overtly claim that he is similarly situated to other employees whose positions were not eliminated in the RIF.

raises the following questions:

> (1) if selections and deselections in connection with the RIF had already taken place at the "hotel meeting," why was it even necessary to perform the elaborate ratings and comments contained in the spreadsheet?; (2) . . . why was it even necessary to compare alleged "incumbents" with persons such as Hinds who were already slated for termination?; (3) why were other members of the CCTTE group – who were clearly not incumbents – not included in the same spreadsheet as Hinds?; (4) how can Sprint now say that those employees with the exact same job titles and salary grades as Hinds, who were also listed on the same spreadsheet but ultimately retained, were not "comparable"; (5) why were the admittedly "subjective" assessments made by Marian Fields and included in the spreadsheet never shared with Al Hinds?; and (6) why did the two oldest employees listed among the thirty (30) in the spreadsheet receive the lowest performance ratings? (Was it to damage their opportunities to find other employment within Sprint?)

Plaintiff's Response To Defendants' Supplemental Memorandum In Support Of Motion For Summary Judgment (Doc. #54) filed December 22, 2006 at 8-9.  Plaintiff contends that Sprint's failure to adequately answer these questions demonstrates pretext.  Id. at 9.

It is not Court's role to second guess defendant's business judgment (or force it to answer plaintiff's rhetorical questions).  See Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004).  The uncontroverted evidence establishes that Sprint managers created the spreadsheet after they decided which employees would remain employed after the RIF.  Plaintiff points to no evidence which casts doubt on defendant's explanation that it terminated his employment because it eliminated his position, and that it retained seven younger employees on the Candidate Selection Worksheet because it did not eliminate their positions.  No reasonable jury could possibly find for plaintiff on his revised age discrimination theory.[10]  Defendant is therefore entitled to summary judgment.

---

[10]     As noted above, plaintiff cannot make a prima facie showing on his original theory that defendant treated him less favorably than similarly situated younger employees in the CCTTE group.  Even if he could make a prima facie showing as to that claim, he has not shown that defendant's stated reason for his termination, that it eliminated the entire CCTTE group, is false.  Defendant has shown that five similarly situated employees from the CCTTE group (including

(continued...)

### III.     Plaintiff's Motion To Alter Or Amend Judgment Pursuant to Rule 59(e)

Plaintiff urges the Court to alter or amend the order which sustained defendant's motion for summary judgment on his retaliation claim.  As an initial matter, to the extent plaintiff seeks relief under Rule 59(e), Fed. R. Civ. P., the motion is premature because the Court has not yet entered judgment in the case.  See Rule 58, Fed. R. Civ. P.  To the extent plaintiff seeks reconsideration, however, the motion is denied.

The Court has discretion whether to grant or deny a motion to reconsider.  See Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir. 1988).  The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice.  See Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981); Burnett v. W. Res., Inc., 929 F. Supp. 1349, 1360 (D. Kan. 1996).

Plaintiff contends that the Court erred in concluding that his Power Point presentation did not constitute protected activity.  In its previous ruling, the Court found that (1) the presentation did not mention age discrimination, (2) plaintiff cited no evidence to support that he sent the presentation to anyone at Sprint and (3) plaintiff did not address defendant's argument that the presentation did not constitute protected opposition.  See Memorandum And Order (Doc. #50) at 12, 12 n.8, 19 n.15. Plaintiff now asserts that he e-mailed the presentation to Rich Joyce and that construed in a light most favorable to plaintiff, the presentation refers to retaliation and age discrimination.  See Plaintiff's Motion To Alter Or Amend Judgment and Memorandum In Support ("Plaintiff's Motion") (Doc. #57) filed December 27, 2006 at 3-4.  Again, plaintiff does not cite record evidence that he e-mailed

---

[10](...continued)
plaintiff) were available for open box positions, and that it selected the three oldest employees and discharged the two youngest.

13

the presentation to Joyce, or when such e-mail supposedly occurred.  A motion to reconsider is not a second opportunity for plaintiff to make his strongest case, to rehash arguments, or to dress up arguments that previously failed.  See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991).  Plaintiff is not entitled to reconsideration on this ground.

Plaintiff contends that the Court disregarded his evidence of pretext when it evaluated the causation element of his prima facie case of retaliation.  Plaintiff argues that under Wells v. Colo. Dept. of Transp., 325 F.3d 1205, 1217-18 (10th Cir. 2003), a proper analysis of causation in a retaliation claim requires consideration of plaintiff's evidence of pretext.[11]  In Wells, the Tenth Circuit found that plaintiff could show causation by pointing to evidence that the stated reason for her termination was pretextual.  See id. at 1217-18.  In so doing, the Tenth Circuit stated as follows:

> [The reasoning in Reeves v. Sanderson Plumbing, Inc., 530 U.S. 133, 147 (2000)] applies with equal force to Title VII retaliation claims.  The causal connection element of a prima facie retaliation claim requires the employee to show that the employer's motive for taking adverse action was its desire to retaliate for the protected activity.  If the employee can show that the employer's proffered reason for taking the adverse action is false, the factfinder could infer that the employer was lying to conceal its retaliatory motive.

Id. at 1218.  The Tenth Circuit acknowledged that pretext is typically analyzed in a later phase of the McDonnell Douglas analysis, but agreed with the Third Circuit that evidence of pretext could be useful in multiple stages of a Title VII retaliation claim.  Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000).

---

[11]    Plaintiff asserts that his memorandum in opposition to summary judgment discussed the Wells decision, but the Court did not discuss its significance.  See Plaintiff's Motion (Doc. #57) at 4 n.2.  Plaintiff's memorandum discussed Wells for the proposition that a five-month gap between protected activity and adverse action is not too great to establish causal connection, but it did not argue that the Court should consider plaintiff's evidence of pretext in determining causation.  See Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Opposition") (Doc. #44) filed September 11, 2006 at 34-36.  In any event, plaintiff does not explain how correcting the alleged error with regard to Wells would lead to a different conclusion.

14

In its previous order, the Court's causation analysis tracked plaintiff's argument, which focused on the "paper trail" which allegedly showed defendant's efforts to get rid of plaintiff. See Plaintiff's Opposition (Doc. #44) and Memorandum And Order (Doc. #50) at 20-22.  As discussed above, plaintiff's evidence of "pretext" does not cast doubt on defendant's stated reasons for firing him.  Plaintiff has not shown an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice.  His motion for reconsideration is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #38) filed August 11, 2006 be and hereby is **SUSTAINED** as to plaintiff's claim for age discrimination.  The Clerk is directed to enter judgement in favor of defendant on all of plaintiff's claims.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Strike The Affidavits Of David Wamsher And Kevin Quirk Or, In The Alternative, To Reopen Discovery (Doc. #52) filed December 22, 2006 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Alter Or Amend Judgment And Memorandum In Support (Doc. #57) filed December 27, 2006 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendants' Motion In Limine (Doc. #60) filed January 2, 2007 be and hereby is **OVERRULED as moot.**

Dated this 9th day of January, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge